Southard J.
This action was brought by James■ Allen, for debauching his daughter Ann, per quod, &c. It was tried at the Monmouth circuit in April 1816, and a verdict rendered in-favour of the plaintiff for 500 dollars *387 damages. In support of the rule to shew cause, &c. two reasons have been filed and insisted on in the argument. - 1. That the damages were excessive. 2. That defendant has discovered new and material evidence since the trial.
It is proper to remark that the court approach the question of damages without hesitation as to their right, to set aside excessive verdicts in cases of torts, as well as in other actions. It is a right necessary to the safe administration of justice; too long established to be at this day questioned; and one which ought, in proper cases, to be vindicated and exercised.
The injury of which Allen complains, lays peculiar claims to damages. Though the action be nominally brought for taking away the services of his servant; yet it designed to remedy a more aggravated wrong; to enforce a satisfaction for the destruction of chastity; for loss of character and happiness in the child; for the overthrow of the father’s hopes; for the violation of the sacredness of his home, and the sanctuary of his love. In such an action, if the plaintiff make a fair and honest case, and if he shew his daughter to have been pure, a jury would not be nice in the calculation of damages, nor ought the court to be the means of restraining them from a verdict, high and exemplary. Such a verdict would be necessary to vindicate the injured rights of the plaintiff, and repress an evil of no ordinary magnitude in society. But every case where a recovery ought to be had, will not entitle the party to heavy damages. In this, as in other kinds of actions, there are grades of suffering on one side, of guilt and criminality on the other. There are instances of incautious fathers and imprudent daughters; as well as fathers without negligence, and daughters without stain. But jurors are always most competent to measure both the offence and the remuneration ; and the court should never interfere with their decision, unless in the language of one of the cases referred to at the bar, (Oowp. 231) *“ the damages given, manifestly shew the jury to have been actuated by passion, partiality, or prejudice,” “such as carry internal evidence of intemperance in their minds.” Such would be a case where there was no contradiction of testimony, *388 but where it was perfectly clear that the father had failed perform his duty, in. instructing and guarding his child, and where the daughter had sunk, not beneath the wiles and artifice of deliberate seduction, but prostrated by the weakness of her own virtue, and the violence of her own passions. Should the jury reward with exorbitant damages, the guilt of such a father and the corruption of such a daughter, the court would arrest their* injustice, and maintain- the distinction between virtue and vice, between chastity and prostitution.
In fixing, the character of the present case, some difficulty arose from the gross contradiction of the witnesses. Those produced by the defendant, swear to many acts of indecent and immodest conduct in Ann Allen; they describe her, not pure and virtuous, but shameless, prostituted, and abandoned; but their testimony is not always consistent, sometimes contradictory, often improbable ; in many cases in which they mark her as corrupt, they proclaim their own pollution ; and they are, in every material fact, directly contradicted by the witnesses of the plaintiff. To reconcile them was impossible, and the jury were obliged to credit one and disbelieve the other. They were compelled to regard Ann Allen as covered with defilement, or those who testified against her as combining to misrepresent and destroy her. They exercised their privilege, and no doubt performed their duty faithfully. They credited the witnesses of the plaintiff'; they disbelieved those of the defendant; and the court will not interfere with their province,-but will yield credit, to whom they have given credit.
What then is this case, as presented by the testimony of the plaintiff? Ann Allen was under the age of twenty-one years, living with, and keeping house for her father at Tuckerton. Defendant was the son of a near and respectable neighbour. Their first acquaintance commenced on a sleighing party: they had been acquainted about two months, and he had visited several times at her father’s house. A party of pleasure to Bass-river, was made up by defendant and two other persons, and she, with a number of neighbours, both married and single, were invited, *and formed the party. They sat up the *389 greater part of the night, engaged in various amusements, common on such occasions; towards day, she retired to her bed, without knowing or suspecting that he intended to follow her; he did follow her into her room, where occurred the only criminal connexion which ever took place between them. She had frequently gone on these parties with the knowledge of her father, but, with regard to all other men, she had been innocent; and a number of very respectable witnesses, swear that her character, previous to this event, had, in every respect, been good. Upon the case, thus presented, were the damages so outrageous and excessive as to demand the interference of this court ? Do they manifest passion, partiality, prejudice, or intemperance, in the minds of the jury ? I think not. Had I been a juror, I think now, as I thought when the verdict was rendered, that I should have hesitated long before I gave so much. Neither father nor daughter were entirely blameless. He did not exhibit, towards her, the watchful anxiety with which a daughter’s purity ought to be guarded. He was culpable in permitting her to associate, in the way she did, with a part of the very witnesses who now accuse her. She too was unguarded, and too easily brought into crime; but still she was tempted, wronged, defiled; the father’s purse, his peace, his character and his affections wrongfully assailed and injured. He was entitled to damages ; he deserved remuneration; and the court do not think the jury have erred, so far as to justify an interference with their decision. Publicmorals required that they should rather err on the side of rigor than of lenity.
In support of the second reason on which the rule is founded, the defendant swears that he has discovered, since the trial, that John Carlisle, Recompence Darby and Thomas Cowperthwaite, can give new and material evidence for him; and in aid of his affidavit, he presents the depositions of these witnesses to the court They detail facts in the conduct of Ann Allen, on a trip to capt. Strong’s vessel, in March 1814, and at Cowperthwaite’s house, during the night of the same day ; and describe her as lewd, profane, and intemperate.
Such facts might have been important upon the trial. *390 Touching the character of the daughter vitally, they would have come home to the subject of damages. But passing by the circumstance, that they all occurred, subsequent to the deed which is *the foundation of the action, and might have been the consequence of it; passing by also the doubt which might be raised, whether particular acts of this kind, relative to the character of the witness, are admissible in evidence; two questions present themselves in relation to this testimony. 1. Is it new, or is it merely additional to, and corroborative of what was given upon the trial. And 2. Could not the defendant have had the benefit of it, if he had exhibited ordinary prudence and diligence in preparing for his defence ?
1. In our examination into the first question we shall find, that John Horner and Elizabeth Horner, both swore to the conduct of Ann Allen, on this trip to Strong’s vessel, and at Cowperthwaite’s. They were her companions and they both charged her with swearing, with drunkenness, with criminal intimacy with Strong, with lewd and indecent deportment. These depositions therefore do not speak of facts of a new kind, occurring at a different time, or applied to a new subject, but tend merely to support the oaths of the Horners, and to depreciate the •character of Ann Allen. Under a conviction, that their oaths were disbelieved by the jury, and that she was not sufficiently discredited, the defendant would now add to his evidence; he would prove by others, the same or like facts, to weaken her, and corroborate them. Can this be permitted ? Would it not be of dangerous consequence, to the rights of parties, and the safe administration of justice ? Ought the court to grant a new trial to a party, merely to correct his error, when he has discovered where he was deficient, and that he had mistaken the necessary amount of testimony ? In 5 Mass. 353, where a new trial was asked, with a view, to add additional circumstances to discredit a witness, already in some degree discredited, the court declare “ as the testimony was not unexpected, to grant a new trial, would be unprecedented and of dangerous consequence.” And in 8 John. 34, it is well said by the court to be “ against the *391 general rule to grant a new trial, merely for the discovery of cumulative facts and circumstances, relating to the-same matter, which was principally controverted on the former trial. It is the duty of parties to come prepared upon the principal point, and new trials would be endless, if every additional circumstance, bearing upon the fact in litigation, was a cause for a new trial.” These cases are well supported by the books, and they *furnish the proper answer to this part of our inquiry. It will be preceived that no regard is paid to the detail of Cowperthwaite’s conversation with Ann Allen. It is too indefinite, to justify any step, founded on it alone. Had it been before the jury, they would not have done right to consider it as proof of her acknowledgment, that Horner was the father of her child.
2. But an investigation of the second question, in reference to this testimony will not be less decisive, than the first. Ordinary prudence and diligence, would have produced the whole of it, at the trial. Who are these new witnesses? Darby, Cowperthwaite and Carlisle, all neighbours of the defendant; all partakers in the transactions which came in question on the trial; all repeatedly mentioned by the witnesses there. Mrs. Darby formed one of the party with the defendant, at the place of the criminal connexion—Carlisle and Cowperthwaite bear conspicuous parts on the day and night of the trip to Strong’s schooner. Could the defendant possibly be ignorant that they might be material witnesses in such a case ? Could he forget Mrs. Darby’s presence at Miller’s ? Could he have conversed with either of the Horners, without learning the parts that Carlisle and Cowperthwaite acted ? And would not even less than common caution, have compelled him to learn what they could say in the matter ? And if he has carelessly permitted himself to remain ignorant of the best means and instruments for his defence, shall this court interfere in his behalf, and save him from the effects of his own indolence and folly? No casein the books, no principle of justice or reason would justify such a course. The broad principle which pervades all the cases is this, that a new trial shall not be granted, where the party might have had the evidence on the first *392 trial, if he had exercised ordinary diligence. Str. 821. Wil. 98, &c. &c. Such is the present case.
This view of the subject is not changed by the fact that Carlisle was out of the county at the time of the trial. The defendant might and ought to have known, what would probably be the amount of his testimony, and if he wished the benefit to be derived from it, he ought to have taken the legal steps to obtain a postponement of the trial until his return.
The rule to shew cause, must be set aside, and judgment entered for the plaintiff.
Rule discharged.